UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DERRICK FLEWELLEN,                              )
                                                )
        Plaintiff,                              )
                                                )
    vs.                                         )          NO.
                                                )
CITY OF CHICAGO, Chicago Police Officers        )
FRANCIS VALADEZ, Star No. 21008;                )
STEVE BUGLIO, Star No. 20865;                   )
JOHN HALLORAN, Star No. 20453;                  )
KENNETH BOUDREAU, Star No. 20435;               )
PAUL JACKSON, Star No. 20932;                   )
DANIEL McDONALD, Star No. 20628;                )
LUKE KELLY, Star No. 20936;                     )
                                                )
        Defendants.                             )

FILED-ED4
00 MAY -4 PM 2:49
U.S. DISTRICT COURT

DOCKETED
MAY 5 - 2000

DOC 2709

JUDGE NORDISE

MAGISTRATE JUDGE BOBRICK

## COMPLAINT

**JURISDICTION**

    1.  The jurisdiction of the Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §

1983 et seq.; 28 U.S.C. §§ 1331 and 1343(3); the Constitution of the United States;  and pendent

jurisdiction as provided under 28 U.S.C. 1376(a)

    2.  Plaintiff Derrick Flewellen is an African American citizen of the United States and the

State of Illinois, residing in the City of Chicago.  At the time of his arrest he was 31 years of age.

    3.  Defendants  Francis Valadez, Steve Buglio, John Halloran, Kenneth Boudreau, Paul

Jackson, Daniel McDonald and Luke Kelly were at all times material to this complaint City of

Chicago police officers, assigned as Violent Crimes detectives.  Each is sued in his individual

capacity.

    4.  These defendants were, at all times material to this complaint, acting under color of

1

state law and in the scope of their employment as Chicago Police officers.

5. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, is the employer and principal of the defendant police officers, and is responsible for the policies, practices and customs of its Police Department and Police Board.

**FACTS**

6. On June 5, 1995, late in the afternoon, an eight year old boy found his mother, 34 year old Sherry Hunt, lying dead in a bedroom of her apartment at 6108 South Carpenter in the City of Chicago.

7. Ms. Hunt's body was nude from the waist down and the medical examiner's primary diagnosis was multiple bilateral pulmonary abscesses with a conclusion she suffered from bronchial pneumonia and both of her lungs were partially collapsed.

8. On June 6, 1995, an unknown civilian discovered the body of a deceased woman, 36 year old Lovie Ford, in a playground near 5820 South Racine in Chicago.

9. Ms. Ford's pants were pulled down and wrapped around the left leg of her partially nude body; the medical examiner concluded she died as a result of strangulation. The DNA of semen recovered from her vagina was later matched to the DNA of convicted serial killer Hubert Geralds.

10. Defendant police officers in the course of their investigation learned on or about June 14, 1995, that Patrice Clegg and Plaintiff Derrick Flewellen were at Saint Bernard's Hospital where plaintiff sought treatment for a foot injury.

11. Defendants Buglio and Valadez proceeded to Saint Bernard's Hospital and observed plaintiff who was being treated for an open dislocation of the second toe on his right foot, with a portion of the bone protruding through the skin, which had resulted from a laceration.

2

12. Plaintiff received intravenous tetanus, antibiotics and the pain medication, Toradol, as well as a narcotic analgesic for pain; his foot was dressed and placed in a post-operative type supportive shoe or foot splint and he was discharged from the hospital at approximately 2:10 a.m. on June 15, 1995.

13. Defendants Buglio and Valadez asked and then ordered plaintiff and Ms. Clegg to go with the officers to Area One, refusing to question plaintiff or Ms. Clegg at the hospital and ignoring plaintiff's refusal to accompany the officers.

14. Defendant Valadez grabbed the arm of Patrice Clegg as plaintiff and she attempted to leave the hospital.

15. Defendant Buglio prevented and refused to allow plaintiff to telephone a taxi cab to provide plaintiff and Ms. Clegg with transportation back to their home.

16. Defendant Valadez grabbed the arm of plaintiff and indicated to plaintiff and Ms. Clegg that they had no choice but to accompany the officers to Area One.

17. Defendant Buglio threatened plaintiff and forced him to accompany the officers to Area One Violent Crime Division, transporting plaintiff and Ms. Clegg in a police vehicle.

18. Defendants Buglio and Valadez arrived at the Area One police station and forced plaintiff to hop on one foot to climb the stairs up to the second floor of the station.

19. At this time plaintiff was suffering much pain and discomfort.

20. Plaintiff and Ms. Clegg were placed in separate interrogation rooms.

21. Defendant Boudreau entered the interrogation room with plaintiff and threatened to charge plaintiff with a drug offense and struck him with a back handed closed fist blow to plaintiff's left temple and subsequently struck plaintiff again in his left jaw area.

22. Plaintiff was taken out of this first interrogation room, shown pictures of two dead

3

women and later placed in another room for a short period of time.

23. Plaintiff had not slept for at least 24 hours and continually asked to be allowed access to pain medication given to him at the hospital and defendants refused all of his requests as his pain and discomfort increased with the passage of time.

24. Plaintiff was taken into a third interrogation room where he was seated on a bench, handcuffed to a metal bar and continued to be subjected to interrogation and repeatedly asked numerous questions.

22. Defendant Kelly came into the room with defendant McDonald and threatened plaintiff that if he did not testify he murdered the two women in the photographs; that plaintiff would receive more than 40 years in the penitentiary, Ms. Clegg would be charged as an accessory to murder and her infant son would be taken from her.

23. During the interrogation of plaintiff by all the individual defendants, plaintiff maintained he had no knowledge concerning the deaths of the two women whom the police identified as Sherry Hunt and Lovie Ford and repeatedly asked to speak to an attorney. His requests were denied and the interrogation continued unabated.

24. Defendants Boudreau and Valadez physically brutalized plaintiff: Defendant Boudreau choked plaintiff with his left hand and struck plaintiff in the face and defendant Valadez stomped on plaintiff's broken toe and slammed a metal chair with wheels into plaintiff's injured right foot. Plaintiff was knocked to the floor and picked up by defendants Boudreau and Valadez and tightly handcuffed above his head.

25. Defendants continued to refuse plaintiff access to his pain medication, further deprived him of sleep and brutalized plaintiff, including defendant Halloran who hit and kicked plaintiff.

4

26. Plaintiff pleaded with the individual defendants to stop abusing him, stating he could not take it any more, but defendants continued to physically assault and batter him and/or failed to intervene to prevent these assaults and batteries.

27. At one point, four of the defendants together, including Boudreau, Kelly, Valadez and Buglio, accompanied by others, came into the interrogation room to confront plaintiff.

28. Defendant Boudreau continued striking and kicking plaintiff to prevent him from sleeping and defendant Buglio slapped plaintiff with extreme force across the face.

29. Plaintiff was presented with a series of documents during the evening hours of June 16, 1995, after he had been held at the police station for more than 36 hours, was in great pain, repeatedly denied pain medication and sleep as well as endured continuous threats and beatings while being interrogated. Defendant Boudreau and others continued to intimidate plaintiff and observe as plaintiff, because of the continuous brutality, threats and coercion he had experienced at the hand of the defendants, affixed his signature to each page.

30. Plaintiff was next taken to a cell where he was allowed to sleep for a short period of time but subsequently was brought out of the cell and returned to an interrogation room by defendant Jackson.

31. Defendant Jackson repeatedly interrogated plaintiff about Lovie Ford and when plaintiff was unable to provide Jackson with any information and refused to confess, defendant Jackson screamed at him, threatening and intimidating plaintiff, that he would be charged with her murder anyway.

32. Defendant Jackson also refused to provide plaintiff his pain medication, refused to provide plaintiff with an attorney as he requested and continued to interrogate plaintiff in a threatening manner. Defendant Jackson made clear to plaintiff his questioning would continue

5

and plaintiff would be denied sleep, pain medication and any relief until plaintiff signed a confession.

33. Plaintiff was subsequently presented with a prepared handwritten statement consisting of multiple pages and as defendant Jackson stood in front of plaintiff, plaintiff signed each page because he had been brutalized, held in police custody for approximately 48 hours and could no longer withstand the pain, assaults, threats and sleep deprivation.

34. During their prolonged and repeated interrogation of plaintiff: Defendants conspiring together, physically and mentally coerced him to sign statements which they knew to be false; in which plaintiff stated he was responsible for the deaths of both Sherry Hunt and Lovie Ford; that he had sexually abused Ms. Hunt and witnessed the sexual abuse of a deceased Ms. Ford by Leroy Bess.

35. These statements were false in their totality as well as patently unreliable and a reasonable police officer involved in the creation of these statements would have known that the statements were coerced, false and unreliable.

36. Subsequent to coercing these statements, defendants were informed by the medical examiner: That absent a confession, the death of Sherry Hunt would not have been ruled a homicide; that no semen whatsoever was recovered from the body of Ms. Hunt; and, furthermore, that semen recovered from the body of Ms. Ford was not secreted by Leroy Bess but matched the DNA of Hubert Geralds.

37. Although defendants had no reasonable suspicion or probable cause to believe that plaintiff had caused either death, they nevertheless wrote false official reports with the intention of causing the arrest, detention, formal charging and prosecution of plaintiff for the murders of both women.

38. On June 15, 1995, at the same time plaintiff was being brutalized, threatened and coerced; Ms. Clegg was also being interrogated by defendants McDonald and Kelly.

39. Over the course of more than 30 hours defendants McDonald and Kelly badgered, threatened and assaulted Ms. Clegg: They told her that unless she cooperated with them, her infant son, who had been brought to the police station, would be taken away and she would be declared an unfit parent when they falsely told the Department of Children and Family Services she used drugs. They also told her they would charge her as an accomplice, saying she was a look out for a murderer and she would be sent to prison unless she told them that plaintiff was involved in murder.

40. By June 16th, defendants had successfully intimidated and coerced Ms. Clegg to falsely testify in front of a Grand Jury that plaintiff had confessed the murder of Sherry Hunt to her in the police station earlier that day.

41. On July 7, 1995, defendant Jackson falsely testified in front of a Grand Jury that his investigation showed plaintiff was responsible for the murders of Lovie Ford and Sherry Hunt when he knew that all the inculpatory evidence against plaintiff had been coerced by himself and the other defendants and was false and unreliable.

42. At his appearance, defendant Jackson, pursuant to his joint actions and agreements with the other individual defendants herein, failed to advise the Grand Jury that the evidence he claimed to have obtained from plaintiff was false and unreliable and had been coerced by himself and the other defendants.

43. Prior to, at the time of, and after their claims and/or testimony defendants failed to advise the State's attorneys that the evidence they claimed to have obtained from plaintiff concerning the deaths of Ms. Hunt and Ms. Ford was coerced, false and unreliable.

7

44. As a result of the false police reports created by defendants, the false testimony given by defendants as well as the false testimony of Ms. Clegg coerced by the defendants, and other wrongful and unlawful acts of the defendants set forth above; the Grand Jury indicted plaintiff for murder of Ms. Hunt and Ms. Ford on July 12, 1995 and he was detained in custody.

45. Plaintiff was forced to remain in custody for 53 and one half months and endured brutal physical attacks as well as extensive emotional distress and abuse.

46. Commencing on March 5, 1997, defendants Valadez and Kelly falsely testified at hearings on plaintiff's motions to quash arrest and suppress statements and defendants Buglio, Halloran and Boudreau subsequently falsely testified at these hearings concerning the death of Sherry Hunt, all causing the Honorable Judge Marcus R. Salone to deny these motions.

47. On November 23, 1998, defendant Jackson falsely testified at a hearing on a motion to suppress concerning the killing of Lovie Ford causing Judge Salone to deny that motion.

48. Defendants Halloran, Kelly, Valadez, Boudreau, McDonald and Jackson falsely testified at plaintiff's trial in which he was prosecuted for murder in the deaths of Ms. Hunt and Ms. Ford.

49. On November 30, 1999, Judge Salone entered a finding of not guilty as to both murder charges, the case and all judicial proceedings caused by defendants were terminated in plaintiff's favor and plaintiff was finally released from the Cook County Jail.

50. Plaintiff was held in custody for almost four and one half years under the most frightening conditions: He was charged with two sexual murders, faced the death penalty during that time, was subjected to constant harassment and attacks by prisoners, mistreatment by guards and had to seek protective custody.

51. As a direct result of the above conduct of defendants, plaintiff suffered bodily pain, injury and suffering, loss of freedom, physical attacks by other prisoners and harassment by guards requiring him to ask for protective custody, mental distress, anguish and humiliation, nightmares, sleep disruption, anxiety, fear of police, depression, inability to focus or concentrate, defamation of character and reputation, loss of companionship, as well as incurred expenses and suffered additional injuries and damage, including, but not limited to, as set forth herein.

### COUNT I
### (42 U.S.C. § 1983 Claim for False Arrest and Imprisonment)

52. Plaintiff realleges paragraphs 1 through 51.

53. The actions of defendants in falsely arresting and detaining plaintiff on June 15th and thereafter without probable cause to believe he had committed a crime, violated plaintiff's Fourth Amendment right to be free from unreasonable arrest and seizure.

54. The aforementioned actions of the defendants were the direct and proximate cause of the constitutional violations set forth above and of the plaintiff's injuries, pain, suffering, severe mental distress, anguish, humiliation, loss of liberty and additional injuries and damage, including, but not limited to, as set forth above.

WHEREFORE plaintiff demands substantial actual or compensatory damages, jointly and severally, from the individual defendants. Additionally, because these defendants acted maliciously, wilfully, wantonly, and/or in reckless disregard for the plaintiff's constitutional rights, plaintiff demands substantial punitive damages from these defendants. Plaintiff also demands costs and attorneys' fees and whatever additional relief this Court deems equitable and just.

## COUNT II
### (42 U.S.C. § 1983 Claim for Malicious Prosecution)

55. Plaintiff realleges paragraphs 1 through 51.

56. The actions of the individual defendants in falsely charging and prosecuting plaintiff for murders of Ms. Hunt and Ms. Ford knowing he had not committed said acts and without probable cause to believe he committed these acts as well as their writing false reports and testifying falsely at the Grand Jury and at the criminal hearings and trial of the plaintiff and by concealing this wrongdoing from State's attorneys and judges, were the proximate cause of plaintiff's being charged with murders, being detained for four and one half years, facing the death penalty as well as other injuries set forth above and constituted a violation of his Fourth and Fourteenth Amendment rights to the U. S. Constitution and thus 42 U.S.C. § 1983.

WHEREFORE, plaintiff demands judgment against the individual defendants, jointly and severally, for compensatory damages for his loss of liberty, the physical and emotional pain he suffered while in custody, as well as continuing emotional and physical injuries and, because these defendants acted maliciously, willfully, wantonly and/or with reckless disregard for plaintiff's constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

## COUNT III
### (42 U.S.C. § 1983 Claim for Conspiracy)

57. Plaintiff realleges paragraphs 1 through 51.

58. Defendants, acting in concert with each other and with other police, investigative, supervisory, and command personnel, together and under color of law, reached an understanding,

engaged in a course of conduct, engaged in a joint action and otherwise conspired among and

between themselves for the purpose of depriving plaintiff of his constitutional rights, and did

deprive plaintiff of said rights, including his right to be free from excessive force, unreasonable

arrest and seizure, from wrongful confinement, imprisonment, and from malicious charging and

prosecution; and his rights to be free from involuntary incrimination and to access to the Courts,

as protected by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States

Constitution and 42 U. S. C. § 1983.

59. In furtherance of this conspiracy or conspiracies, defendants, together with their

coconspirators, committed the overt acts set forth above, including, but not limited to, the

wrongful arrest, detention, assaults and batteries, imprisonment and prosecution of plaintiff; the

unconstitutional coercion of false statements, creation of knowingly false and allegedly

inculpatory evidence against plaintiff; the coercion of plaintiff and Ms. Clegg in an attempt to

compel them to falsely inculpate plaintiff,  the making of knowing misstatements and the

presentation of knowingly false and incomplete evidence to prosecutors and judges, the giving of

false testimony and the filing of false and incomplete statements and reports.

60. Said conspiracy or conspiracies, joint actions and overt acts, caused plaintiff injury

and damage as set forth above, which commenced on or about June 15, 1995, continues to this

date, as defendants have yet to publicly exonerate plaintiff.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally,

for compensatory damages for his loss of liberty, physical and emotional pain he suffered while

in custody, as well as continuing emotional and physical injuries and, because these defendants

acted maliciously, willfully, wantonly, and/or with reckless disregard for plaintiff's constitutional

rights, for punitive damages, plus the costs of  this action, attorneys' fees and such other relief as

11

this Court deems equitable and just.

## COUNT IV
### (State Law Claim for Malicious Prosecution)

61. Plaintiff realleges paragraphs 1 through 51.

62. Defendants individually, jointly, and in conspiracy, initiated and continued a malicious prosecution without probable cause against plaintiff. Said prosecution was ultimately terminated and determined in plaintiff's favor. The defendants' actions were done in a willful and wanton manner, and directly and proximately caused the injury and damage to plaintiff set forth above.

WHEREFORE, plaintiff demands actual or compensatory damages against defendants, jointly and severally and because these defendants acted in a malicious, willful and/or wanton manner toward plaintiff, punitive damages and such other and additional relief as this Court deems equitable and just.

## COUNT V
### (State Law Claim for Intentional Infliction of Emotional Distress)

63. Plaintiff realleges paragraphs 1 through 51.

64. Defendants, by interrogating and physically abusing plaintiff for hours, coercing the signing of false statements using such purported statements as the basis for arresting him, placing false charges against him, detaining him and initiating a process causing his further detention, procuring his prosecution for a murder he did not commit and otherwise abusing plaintiff, all the while knowing that he was not committing, had not committed and was not about to commit any offense, engaged in extreme and outrageous conduct.

12

65. Defendants intended, by subjecting plaintiff to such humiliating, degrading, abusive conduct, to inflict severe emotional distress on plaintiff, and knew that their conduct would cause plaintiff severe emotional distress.

66. As a direct and proximate result of defendants' outrageous conduct, plaintiff was injured and experienced severe emotional distress, including but not limited to, as set forth above.

WHEREFORE, plaintiff demands judgment against defendants for compensatory damages and the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

## COUNT VI
### (State Law Claim for *Respondeat Superior*)

67. Plaintiff realleges paragraphs 1 through 51.

68. The defendant police officers were, at all times material to this complaint, employees of the defendant City of Chicago, were acting within the scope of their employment, and their acts which violated state law are directly chargeable to the defendant City under state law pursuant to *respondeat superior*.

WHEREFORE, plaintiff demands judgment for compensatory damages against the City of Chicago plus the costs of this action and whatever additional relief this Court deems equitable and just.

## COUNT VII
### (745 ILCS 10/9-102 Claim Against the City)

69. Plaintiff realleges paragraphs 1 through 51.

70. Defendant City of Chicago was the employer of defendant police officers at all times relevant to this complaint.

71. These defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, plaintiff, pursuant to 745 ILCS 10/9-102, demands judgment against the defendant City of Chicago in the amounts awarded to plaintiff against the individual defendants as damages, attorneys' fees, costs and interest, and for whatever additional relief this Court deems equitable and just.

Respectfully submitted,

JEFFREY H. HAAS
JANINE L. HOFT
PEOPLE'S LAW OFFICE
1180 N. Milwaukee
Chicago, IL 60622
773/235-0070

Attorney for Plaintiff

May 3, 2000

**Plaintiff demands trial by jury on all counts.**

14

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)



**I. (a) PLAINTIFFS**

JUDGE NORGLE

Derrick Flewellen

MAGISTRATE JUDGE BOBRICK

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60622    (773) 235-0070

**DEFENDANTS**
Chicago Police Officers F. Valadez, S. Buglio, J. Halloran, K. Boudreau, P. Jackson, D. McDonald, L. Kelly and the CITY OF CHICAGO

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

00C 2709

ATTORNEYS (IF KNOWN)

JEFFREY HAAS
JANINE HOFT

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE — DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. 1983; the judicial code, 28 U.S.C. 1331 1343 (a); the Constitution of the United States; and pendent jurisdiction as provided under 28 U.S.C. 1367 (a).

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

**VIII.** This case ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE
July 9, 1999

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS



**In the Matter of**    DERRICK FLEWELLEN

vs.

Chicago Police Officers, F. Valadez, #21008; S. Buglio, #20865; J. Halloran, #20453; K. Boudreau, #20435; P. Jackson, #20932; D. McDonald, #20628; L. Kelly, #20936

**Case Number:** 

**APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:**

Plaintiff

**JUDGE NORGLE**

**MAGISTRATE JUDGE BOBRICK**

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME JEFFREY HAAS | NAME JANINE HOFT |
| FIRM People's Law Office | FIRM same as (A) |
| STREET ADDRESS 1180 N. Milwaukee Ave. | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60622 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (773) 235-0070 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER 1092235 | IDENTIFICATION NUMBER 6188139 |
| MEMBER OF TRIAL BAR? YES [X] NO [ ] | MEMBER OF TRIAL BAR? YES [X] NO [ ] |
| TRIAL ATTORNEY? YES [X] NO [ ] | TRIAL ATTORNEY? YES [X] NO [ ] |
| | DESIGNATED AS LOCAL COUNSEL? YES [X] NO [ ] |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR? YES [ ] NO [ ] | MEMBER OF TRIAL BAR? YES [ ] NO [ ] |
| TRIAL ATTORNEY? YES [ ] NO [ ] | TRIAL ATTORNEY? YES [ ] NO [ ] |
| DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] | DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**